## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **KATHERINE L. EASTER,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No.: 1:23-CV-458-JB-B** |
| | ) | |
| **I.C. SYSTEM, INC., EXPERIAN** | ) | |
| **INFORMATION SOLUTIONS,** | ) | |
| **INC., and TRANS UNION, LLC.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## DEFENDANT I.C. SYSTEM, INC.'S
## MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS

Defendant I.C. System, Inc. hereby moves this Court, pursuant to Rule 12(c) of the Federal Rules of Civil Procedure Evidence, to enter a partial judgment on the pleadings, and as grounds therefor, states as follows:

### I. Procedural Background

On December 7, 2023, the Plaintiff filed a Complaint in this court alleging that Defendant I.C. System (IC) violated the Fair Credit Reporting Act (FCRA) and Fair Debt Collection Practices Act (FDCPA). *See* Doc. 1, generally. The instant Motion is directed solely at the Plaintiff's FCRA claims.

### II.The Plaintiff's Complaint

The Complaint is based on IC's attempt to collect a debt allegedly owed to

1

Mediacom Wireless of Alabama, Inc. (Mediacom).[1] *Ibid.*, generally. It is the Plaintiff's position that while she had an internet account with Mediacom, the account at issue belonged to a man name Eugene Newell, to whom she was allegedly providing private nursing services. *Ibid.* at "PRELIMINARY STATEMENT" pp. 1-2, ¶ 9. While she admits contacting Mediacom to establish an account for internet services, she claims that she contacted Mediacom on behalf of Mr. Newell. *Ibid.*

According to the Complaint:

- After Mr. Newell passed away, "the Medicom account went into collection … and [was] sold [] to IC System." *Ibid.* at p. 13.

- IC "knew or should have known that Plaintiff did not create the account and never agreed to be personally responsible for the account." *Ibid.*[2]

- The Plaintiff "received a collection letter and repeated and harassing collection calls from IC System's collectors"[3] including "numerous robo collection calls." *Ibid.* at ¶ 13.

- "IC System also reported to the CRA Defendants information indicating that Mrs. Easter was legally responsible for Mr. Jewell's charged-off Mediacom account." *Ibid.* at ¶ 16.

- The Plaintiff "submitted online disputes" of IC's credit reporting to Experian and Trans Union, who allegedly forwarded the disputes to IC resulting in IC "verif[ying] the false information" it reported regarding the Mediacom account. *Ibid.* at ¶ 19.

---

[1] The Plaintiff claims that IC "purchases defaulted debt" and that it "acquired" the Plaintiff's Mediacom debt. There are no facts alleged supporting these conclusory allegations, which are simply false.

[2] These allegations appear to be based largely on the mistaken assumption that IC purchased the account. *See*, *e.g.* "IC System knows or should know that the information provided **when the loan was purchased** was incomplete and/or unreliable." *Ibid.* at ¶ 2 (emphasis added).

[3] Despite the allegations of harassing conduct, which if true would violate the FDCPA, no such FDCPA claim exists in the Complaint.

- In February 2023, the Plaintiff "submitted letters to each of the CRA Defendants disputing the information reported by IC System." *Ibid.* at 20.

- Trans Union "forwarded the dispute to IC System [and] IC System reported back to Trans Union that the information was verified as accurate." *Ibid.* at ¶ 22.

- Plaintiff also sent a dispute letter directly to IC System dated February 13th explaining that the information it was reporting to the credit bureaus was false, stating that she was not responsible for Mr. Jewells' account and demanding that the false credit reporting cease." *Ibid.* at ¶ 24.

- The Plaintiff sent a second dispute letter to Trans Union in September 2023, which was forwarded to IC System, who "reported back to Trans Union that the information was accurate." *Ibid.* at ¶ 30.

- "IC System failed to perform any reasonable investigation of Plaintiff's disputes." *Ibid.* at ¶ 34.

- IC violated the FCRA by:

    (a) Failing to fully, properly, or reasonably investigate Plaintiff's dispute of the false and derogatory information;

    (b) Failing to review all relevant information regarding Plaintiff's dispute and/or by disregarding that information after review;

    (c) After receiving notice of Plaintiff's dispute, continuing to submit false and derogatory information to the CRA Defendants and other consumer reporting agencies regarding Plaintiff, knowing that the information was false, incomplete or not verifiable;

    (d) Failing to modify, delete or permanently block the reporting of credit information regarding Plaintiff which IC System knew to be false, incomplete and/or not verifiable; and

    (e) Failing to accurately respond to Plaintiff's dispute made through the CRA Defendants after receipt of that dispute.

3

*Ibid.* at ¶ 46.

### III. Plaintiff's Suit against Mediacom in State Court

In addition to suing IC and various CRAs in this federal lawsuit, on November 20, 2023, the Plaintiff filed a lawsuit in Alabama state court against Mediacom (the Mediacom Lawsuit). *See* Doc. 27-1.[4] The Complaint in the Mediacom Lawsuit parrots many of the same allegations made here, including the claim that the Plaintiff wasn't responsible for the account because she opened it not for herself but for Mr. Jewell. *Ibid.* at ¶¶ 4-8. And while the claims in the Mediacom Complaint are all based on common law, the factual assertion underlying the claims is identical to the claim the Plaintiff makes here: she doesn't owe the debt to Mediacom. *Ibid.*, generally. She claims, *inter alia*, that Mediacom has falsely associated her with Mr. Jewell's account and defamed her by "identifying [to IC] Plaintiff as a legally responsible party in connection with Mr. Jewell's account." *Ibid.* at ¶¶ 16, 20.

Mediacom is defending the lawsuit and in response to the Complaint, filed a Motion for a More Definite Statement. *See* Doc. 27-2. The Plaintiff subsequently filed an Amended Complaint in the Mediacom Lawsuit that, essentially, repeated the above-cited allegations of wrongdoing by Mediacom and claims that "Mediacom knew or should have known that Plaintiff was not legally responsible for Mr.

---

[4] IC has filed a Request for Judicial Notice of various court filings in the Mediacom Lawsuit. *See* Doc. 27.

Jewell's account." *See* Doc. 27-3 at ¶ 12.

Like her claims in the original Complaint, the claims in the Mediacom Lawsuit's Amended Complaint are all premised on the assertion that the Plaintiff is not responsible for the Mediacom account that IC credit reported. She claims that Mediacom committed the tort of invasion of privacy by targeting her "with respect to a debt which Mediacom knew or should have known was not owed by the Plaintiff." *Ibid.* at 15. The Amended Complaint also alleges that Mediacom unlawfully appropriated her name and personal information due to its "false association of Plaintiff with Mr. Jewell's account," and defamed her by "falsely identifying" her as being "legally responsible" for the Mediacom account. *Ibid.* at ¶ 23. At bottom, each of her claims is premised on the notion that she is not responsible for the Mediacom account. To prevail on any or all of her claims in the Mediacom Lawsuit, the Plaintiff must prove that she is not responsible for the Mediacom Account *i.e.*, the same account that gives rise to her FCRA claims against IC.

### IV. Standard of Review

A party may move for judgment on the pleadings "[a]fter the pleadings are closed—but early enough not to delay trial." Fed. R. Civ. P. 12(c). "Judgment on the pleadings is appropriate when there are no material facts in dispute, and judgment may be rendered by considering the substance of the pleadings and any judicially noticed facts." *Hawthorne v. Mac Adjustment, Inc*., 140 F.3d 1367, 1370 (11th Cir.

1998) (citing Fed. R. Civ. P. 12(c)); *see also Horsley v. Rivera*, 292 F.3d 695, 700 (11th Cir. 2002).

## V. Argument

1.  **IC is entitled to judgment on the pleadings on the Plaintiff's FCRA claims because they're based on a "legal dispute," not a "factual inaccuracy."**

In reviewing FCRA claims alleging a furnisher reported inaccurate information and failed to conduct a reasonable investigation, the Eleventh Circuit has distinguished "legal disputes" from "factual inaccuracies," holding that only the latter situation can give rise to a valid FCRA claim. For example, in *Hunt vs. JP Morgan Chase Bank,* the Panel ruled: "A plaintiff must show a factual inaccuracy rather than the existence of disputed legal questions to bring suit against a furnisher under § 1681s-2(b)." *Id.*, 770 F. App'x 452, 458 (11th Cir. April 25, 2019) (unpublished).

There, the plaintiff filed an FCRA class action against her mortgage holder JP Morgan Chase alleging that it failed to adequately investigate disputes as to the accuracy of the bank's credit reporting. *Id.* at 453. In the complaint, the plaintiff claimed that the defendant had inaccurately reported delinquencies on the loan. *Id.* at 455. The defendant filed a motion to dismiss arguing that the plaintiff's "contention that he was no longer obliged to make monthly payments once the loan was accelerated was 'a legal argument, not a factual inaccuracy,' and it therefore could not form the basis of his FCRA claim." *Id.* at 456. The district court agreed

and dismissed the case. *Id.*

On appeal, the Eleventh Circuit Panel affirmed stating:

A plaintiff must show a factual inaccuracy rather than the existence of disputed legal question to bring suit against a furnisher under § 1681s-2(b). Whether Hunt was obligated to make payments on the mortgage … is a currently unresolved legal, not a factual, question. Thus, even assuming that turned out to be legally incorrect under some future ruling, [the defendant's] purported legal error was an insufficient basis for a claim under the FCRA.

*Id.* at 458.

The following year, another Eleventh Circuit Panel revisited the "legal vs. factual dispute" issue in *Batterman v. BR Carroll Glenridge* and reached the same conclusion. *Id.*, 829 F. App'x 478 (11th Cir. Oct. 7, 2020) (unpublished). In that case, the plaintiff rented an apartment from the defendant but moved out prior to the end of the lease after the defendant allegedly failed to address a leak that caused harmful mold to grow inside a storage closet and living room. *Id.* at 479. The defendant claimed that the plaintiff owed nearly $3,000 in "liquidated damages" and referred the matter to a collection agency. *Id.* Both the landlord and collection agency credit reported the alleged debt; the plaintiff disputed the credit reporting with the credit reporting agencies and attached pertinent documents supporting his claim that the defendant truly owed him money. *Id.* When his disputes didn't achieve the desired results, the plaintiff sued the debt collector and consumer reporting agency claiming they failed to conduct reasonable investigations of his disputes. *Id.* The

district court granted the defendants judgment on pleadings after determining that the plaintiff failed to allege a "factual inaccuracy." *Id.* at 480.

On appeal, an Eleventh Circuit Panel affirmed the ruling, holding that the propriety of the landlord claiming the plaintiff owed "liquidated damage" was "a contractual dispute" and "contractual disputes require resolution by a court of law." *Id.* at 481. As relevant here, the Panel recognized that the true nature of the plaintiff's claim was not that the defendants had "reported any factually incorrect information in his credit report, but rather, that they failed to accept his interpretation that he lawfully terminated the lease due to its uninhabitability." *Id.* Hence it was a legal dispute that could not provide a basis for an FCRA claim. *Id.* at 481-82. The same is true here. The Plaintiff "does not allege any factual error, instead, he states that the report was inaccurate because he did not owe this balance." *See Mayer v. Holiday Inn Club Vacations*, No. 6:20-cv-2283-GAP-EJK, 2021 WL 2942674, 2021 U.S. Dist. LEXIS 132103 at *6 (M.D. Fla. Mar. 9, 2021).

In a post-*Batterman* ruling, another Alabama federal court determined a debt collector in an FCRA case had no liability because the Plaintiff was in a legal dispute with the creditor. *See Scaife v. National Credit Systems, Inc.*, No. 1:20-cv-00379-CLM, 2021 WL 1610620, 2021 U.S. Dist. LEXIS 79472 (N.D. Ala. Apr. 26, 2021). There, the debt collector credit reported a debt the landlord claimed the plaintiff owed and verified the accuracy of its reporting after the plaintiff disputed the debt

with a credit reporting agency. *Id.* at *2. In dismissing the plaintiff's FCRA claims,

the court—citing *Batterman*—stated:

> To determine whether Andrew had this defense to payment, NCS would
> have had to make the following legal determinations: (1) the failure to
> refund the security deposit or provide Andrew with an itemization of
> damages violated Alabama law; (2) the remedy for Maple Village's
> violation of Alabama law is that it owed Andrew $600; and (3) that
> Maple Village owed Andrew $600 relieved him of his obligation to pay
> Maple Village the full $734 balance that he owed it. The FCRA does
> not require NCS to resolve these legal questions; that's left up to the
> courts.

*Id.* at *6.

Applying the same analysis here demonstrates that the Plaintiff's FCRA

claims are based on a "legal dispute" not a "factual inaccuracy" because IC would

have had to ultimately determine whether the Plaintiff was, in fact, responsible for

the debt Mediacom claims she owes. Of note, the Plaintiff doesn't claim that she

owes an amount *other* than the amount IC reported as due to the credit reporting

agencies or that IC failed to report the debt as "disputed" despite her dispute. Her

position is instead that she has no legal obligation to pay Mediacom, period. While

she may ultimately be correct, "[t]he FCRA does not require [IC] to resolve these

legal questions; that's left up to the courts"—or in this case—the state court in the

Mediacom Lawsuit. *Id.* at *6; *see also Jackson, supra*, 2022 WL 1493849, 2022 U.S.

Dist. LEXIS 85075 at *13 ("Whether Jackson was obligated to make the $10,000

payment … is an unresolved legal issue."); *Mayer*, U.S. Dist. LEXIS 132103, at *6

(same).

For this court to rule that IC reported inaccurate information to the credit reporting agencies, it would first have to determine that *at the time IC was reporting the debt*, the Plaintiff didn't owe it—despite Mediacom's contrary claim. But the contest between Mediacom and the Plaintiff over the legitimacy of the debt is before the Alabama State Court in the Mediacom Lawsuit filed by the Plaintiff. That court is charged with deciding the "legal dispute" between the Plaintiff and Mediacom over the Mediacom Account. Irrespective of the outcome of that suit, no FCRA lies against IC because the FCRA doesn't require furnishers to choose sides in disputes between creditors and customers over the legitimacy of a claimed debt. And a future determination by the state court that the Plaintiff doesn't owe the Mediacom debt wouldn't provide a basis for this court to impose *ex post facto* FCRA liability on IC.

Additional case law from various other federal courts further buttresses the Defendant's position here that the Plaintiff is in a legal dispute with Mediacom. In *Brill v Trans Union*, for example, the plaintiff claimed the defendant violated the FCRA by continuing to report a defaulted debt as his responsibility even though his signature had been forged on the lease extension that created the debt at issue. *Id.*, 2015 U.S. Dist. LEXIS 167980 at *1 (W.D. Wis. 2015). In that case, the plaintiff alleged that, unbeknownst to him, his ex-girlfriend had "extended the lease … in both her name and [his]." *Id.* When the plaintiff discovered that the account was

10

being credit reported, he informed both the lender and Trans Union of the forged

signature, specifically indicating to Trans Union:

> that his purported signature on the lease extension lacked his middle
> initial. Brill told Trans Union that he always signed his name using the
> middle initial "D," even in places where his name was not typed with
> the middle initial. Brill also provided Trans Union with "at least four
> points of handwriting analysis of his signature."

*Id.*

The creditor nonetheless continued to assert the plaintiff was responsible for

the lease, and Trans Union continued to report the debt as the plaintiff's

responsibility, and in default. *Id*. The Plaintiff here claims that the account is not

hers because it was opened (by her) in Mr. Jewell's name. But Mediacom has taken

the opposite position by defending the Mediacom Lawsuit. In reviewing a similar

factual claim in *Brill*, the court noted that "courts have found that the proper target

of the plaintiff's claim is the creditor, which is in a much better position to determine

the authenticity of its own records."[5] *Id*. at *8. In his brief, the plaintiff in *Brill*

suggested that the defendant "easily could have discovered the forgery by comparing

the 2013 lease extension with his handwriting samples." *Id*. at *10. But the court

---

[5] While some decisions from federal courts draw distinctions between the roles of credit reporting agencies and furnishers—Defendant falls into the latter category—those cases almost exclusively involve credit reporting by the creditor on the account, who is the furnisher for credit reporting purposes. Here the Defendant in this case is technically a "furnisher," but it, like the credit reporting agencies, was not the originator of the account in question and had no legal right to determine the account was invalid since Mediacom has taken the opposite position band is defending the Mediacom Lawsuit.

rejected that argument, ruling: "whether Brill's signature on the 2013 lease extension is a forgery is a legal question that Trans Union could not resolve through reinvestigation." *Id.* at *11. And as importantly, the court noted that:

> even if Trans Union were to have performed its own handwriting analysis and decided that it believed Brill's explanation, Trans Union had no authority to cancel [the creditor's] lease or otherwise to relieve Brill of his obligation to [the creditor]. That was the prerogative of [the creditor] or a court.

*Id.*

The same is true here. Even if IC's investigation determined that the Plaintiff was not responsible for the Mediacom Account, that determination would not mean the Plaintiff doesn't owe the debt, and the following example proves the point. Assume IC were to conduct an in-depth investigation and now determine that the account doesn't belong to the Plaintiff. That finding would have no impact on Mediacom nor would it bind the state court in the Mediacom Lawsuit and thereby, compel that court to issue judgment in favor of the Plaintiff on the merits of her claims against Mediacom, all of which are premised on the notion she didn't owe the debt. A resolution of the legal dispute between the Plaintiff and Mediacom is firmly in the hands of the state court and that court alone has jurisdiction to resolve the contest between the Plaintiff and Mediacom.

Other courts have ruled likewise in FCRA cases involving disputes between creditors and "customers" over the legitimacy of a claimed debt. For example:

- In *Adkins v SLM Corp.*, a factually similar case to this one, the plaintiff claimed that the defendant violated the FCRA with respect to a dispute he made on a loan he claimed belonged to his father. The court rejected the plaintiff's argument that he wasn't challenging the validity of the debt but instead claiming—factually—that he was never a party to the contract. The court rejected the argument finding that the plaintiff was required to resolve his dispute with the creditor, "who is in the best position to respond to his assertion that he did not sign these student loans." *Id.*, 2022 U.S. Dist. LEXIS 135623 at *14 (D. Kan., July 29, 2022).

- In *Creel vs. Equifax*, the plaintiff alleged that Verizon violated the FCRA with respect to a Verizon account that never existed claiming, like the Plaintiff here, "that the existence of an account between himself and Verizon is factually incorrect." *Id.*, 2020 U.S. Dist. LEXIS 254317 at *9 (N.D. Ga., Aug. 12, 2020). The Magistrate Judge entered a Report and Recommendation rejecting the argument finding the matter involved a legal dispute. *Id.* at *13. The presiding judge adopted the R&R noting: "Plaintiff is disputing the legal validity of the under debt and did not present a factual inaccuracy to the credit reporting agencies." *Creel v Equifax*, 2020 U.S. Dist. LEXIS 254239 at *4 (N.D. Ga., Nov. 9, 2020).

- In *Holden vs. Holiday Inn Club Vacations, Inc.*, the plaintiff claimed the defendant had defrauded her and then violated the FCRA by verifying the accuracy of its credit reporting after the plaintiff disputed it. The court ruled "this is a contract dispute," which could not form the basis for an FCRA claim. *Id.*, 2022 U.S. Dist. LEXIS 62830 at *7 (M.D. Fla., Feb. 28, 2022).

- In *Adkins v SLM Corp.*, the plaintiff claimed that the defendant violated the FCRA with respect to a dispute he made on a loan he claimed belonged to his father. The court rejected the plaintiff's argument that he wasn't challenging the validity of the debt but instead claiming—factually—that he was never a party to the contract. The court rejected the argument finding that the plaintiff was required to resolve his dispute with the creditor, "who is in the best position to respond to his assertion that he did not sign these student loans." *Id.*, 2022 U.S. Dist. LEXIS 135623 at *14 (D. Kan., July 29, 2022).

The Defendant's argument that the Mediacom Lawsuit demonstrates that a

"legal dispute" exists between the Plaintiff and Mediacom is also supported by Judge

Rosenbaum's concurring opinion in the Eleventh Circuit *Milgram vs. Chase Bank* opinion from last year. In that case, the plaintiff filed an FCRA lawsuit after the bank failed to remove derogatory information related to an employee's illegal use of the plaintiff's Chase credit card. *Id.*, 72 F.4th 1212, 1214 (11th Cir. 2023). The court ultimately determined that Chase had no liability under the FCRA. But more importantly for our purposes, Judge Rosenbaum wrote a concurring opinion in which she recognized that disputes between creditors and consumers over claimed debts create legal disputes that ultimately can only be settled by a court. She rightly observed that a consumer, like the Plaintiff here, "could properly use a declaratory-judgment action to challenge a creditor's determination." *Id.* at 1221. While the Plaintiff's state court lawsuit against Mediacom is not a *per se* declaratory action,[6] it is substantively a declaratory action because the Plaintiff is asking the state court to find that Mediacom committed various privacy-related torts by falsely claiming and telling others that she was responsible for the Mediacom Account. She cannot succeed on her claims unless the state court affirmatively determines *i.e., **declares***, that she is *not* responsible for the Mediacom Account. The Plaintiff is in a legal dispute/lawsuit with Mediacom over the validity of the debt. Her FCRA claims against IC are therefore fatally flawed and must be dismissed with prejudice.

---

[6] The Plaintiff could have included a declaratory judgment claim in the Mediacom Lawsuit but chose not to do so for reasons known only to her and her counsel.

## 2. IC is entitled to judgment on the pleadings on the Plaintiff's FCRA claims because a "reasonable investigation" would not have revealed an inaccuracy.

In *Felts v. Wells Fargo Bank*, the 11th Circuit Panel, held:

> Regardless of the nature of the investigation a furnisher conducted, a plaintiff asserting a claim against a furnisher for failure to conduct a reasonable investigation cannot prevail on the claim without demonstrating that had the furnisher conducted a reasonable investigation, the result would have been different; i.e., that the furnisher would have discovered that the information it reported was inaccurate or incomplete, triggering the furnisher's obligation to correct the information. Absent that showing, a plaintiff's claim against a furnisher necessarily fails, as the plaintiff would be unable to demonstrate any injury from the allegedly deficient investigation. And, in turn, a plaintiff cannot demonstrate that a reasonable investigation would have resulted in the furnisher concluding that the information was inaccurate or incomplete without identifying some facts the furnisher could have uncovered that establish that the reported information was, in fact, inaccurate or incomplete.

*Id.*, 893 F.3d 1305, 1313 (11th Cir. 2018).

Because the Plaintiff is currently embroiled in a lawsuit against Mediacom that implicates the legitimacy of the debt at issue, she cannot establish that, had Defendant "conducted a reasonable investigation" when she disputed the debt last year, it "would have discovered that the information it reported was inaccurate or incomplete." *Id.* at 1313. The fact that Mediacom is defending the Plaintiff's claims in state court demonstrates that, as of the filing of the instant Motion, Mediacom is taking the position that the Plaintiff is responsible for the Mediacom Account.

In *Felts*, the plaintiff sued Wells Fargo claiming it "failed to conduct a

15

reasonable investigation of its credit reporting or her mortgage loan" with the company. *Id.* at 1309. The district court granted the defendant summary judgment because the plaintiff failed to make a "threshold showing that a reasonable investigation could have uncovered an inaccuracy." *Id.* The Eleventh Circuit, in reviewing the lower court's ruling, explored the concept of a "reasonable investigation" at length, ultimately concluding that courts reviewing FCRA claims against furnishers need not determine whether the furnisher's investigation was "reasonable" unless the plaintiff can *first demonstrate* that such an investigation "would have discovered that the information it reported was inaccurate or incomplete, triggering the furnisher's obligation to correct the information." *Id.* at 1313, *see also Hunt vs. JP Morgan Chase Bank,* 770 F. App'x 452, 458 (11th Cir. April 25, 2019) (unpublished).

On appeal, the court engaged in an extensive review of the defendant's loan agreement with the plaintiff to determine whether the defendant's credit reporting was inaccurate. *Id.* at 1313-15. A similar analysis is not required here to determine that IC is entitled to summary judgment because the issue of whether the Plaintiff owes the Mediacom debt is squarely before the state court in the Mediacom Lawsuit. IC was not and is not in a position to rule on that dispute. *See Chiang v. Verizon New England, Inc.*, 595 F.3d 26, 36 (3rd Cir. 2010) ("furnishers are neither qualified nor obligated to resolve matters that turn on questions that can only be resolved by a

court of law.") (internal citations omitted).

IC's argument that it is entitled to summary judgment because the Plaintiff cannot prove a "reasonable investigation" would have revealed that IC had inaccurately reported the debt finds additional support in post-*Felts* decisions from other Alabama federal courts. In *Bruce v. Ally Financial,* for example, the court granted the defendant judgment on the pleadings finding that the plaintiff's FCRA claims were fatally flawed because she "points to no fact or information that Ally would have uncovered as inaccurate or incomplete if it had conducted a different investigation." *Id.*, No. 3:20-cv-128-ECM (WO), 2021 U.S. Dist. LEXIS 183087, at *9 (M.D. Ala. Sep. 24, 2021). The same is true here since Mediacom has never affirmatively retreated from its position that the Plaintiff owes the debt, meaning IC couldn't have uncovered inaccuracy because none existed when the Plaintiff disputed the debt.

About a month before the court's ruling in *Bruce*, another Alabama Federal judge district dismissed a similar FCRA claim against a furnisher citing *Felts* for the concept that a determination of whether the furnisher's investigation "was unreasonable...depends on what the furnishers' investigation could have uncovered." *See Griffin v. Experian Information Solutions, Inc.*, No. 1:20-cv-801-RAH-SMD, 2021 U.S. Dist. LEXIS 161647, at *7 (M.D. Ala. Aug. 26, 2021). And because the plaintiff's allegations on that issue were "woefully deficient," the court

found that the complaint failed to state a claim. *Id.* at *9.

While the issue comes before this Court on IC's Motion for Judgment on the Pleadings instead of a motion to dismiss, the same rationale nonetheless applies and compels a similar result. Specifically, whether IC conducted a reasonable investigation of the Plaintiff's dispute "depends on what [IC's] investigation could have uncovered." *Griffin, supra* at *7. And the Mediacom Lawsuit establishes that Mediacom has steadfastly maintained that the Plaintiff is responsible for the account. A "reasonable investigation" prior to that lawsuit having been filed would *not* have resulted in IC learning that it was inaccurately reporting the Plaintiff's Mediacom debt as being owed. The Plaintiff's FCRA claims are therefore fatally defective, and IC is entitled to judgment as a matter of law.

**3. Even if the Court were to determine that IC is not entitled to judgment on the pleadings on the Plaintiff's FCRA claims premised on the allegation that IC failed to conduct a "reasonable investigation," IC is entitled to judgment on any other FCRA claims being pursued by the Plaintiff.**

While § 1681s–2(a)(1)(A) of the FCRA prohibits entities from "furnish[ing] any information relating to a consumer to any consumer reporting agency if the person knows or has reasonable cause to believe that the information is inaccurate," Congress "limit[ed] a consumer's private cause of action against a furnisher of credit information to violations of § 1681s–2(b)." *See Chipka v. Bank of Am.*, 355 F. App'x 380, 383 (11th Cir. 2009) (unpublished). While it *appears* from the Complaint that

the Plaintiff's FCRA claims against IC are premised solely on §§ 1681s-2(b)(1)(A) and 1681s-2(b)(1)(B), some of her allegations create the inference that the Plaintiff may be attempting to sue IC merely because it reported allegedly false information.

Any such claim would be premised on a violation of § 1681s-2(a). But only the attorney general of Alabama or an appropriate federal official would have standing to pursue such a claim against IC. *See* 15 U.S.C. §§ 1681s-2(c), (d). Because the Plaintiff "is not the Attorney General of Alabama or an appropriate federal official, the plaintiff has no standing to allege claims under 1681s–2(a)." *Riley v. Gen. Motors Acceptance Corp.*, 226 F. Supp. 2d 1316, 1319 (S.D. Ala. 2002); *see also Brooks v. Blue Cross & Blue Shield of Florida, Inc*., 116 F.3d 1364, 1378 (11th Cir. 1997) (concluding that Congress did not intend to create a private cause of action under the statute at issue and thus that plaintiffs at bar lacked prudential standing to pursue their claim). Since the legal issue of whether IC violated § 1681s–2(a) is not properly before the court, reaching the merits would require the Court to write an impermissible advisory opinion. *See Calderwood v. United States*, 623 F. Supp. 3d 1260, 1274 (N.D. Ala. 2022). Hence, to the extent the Plaintiff is pursuing such a claim, IC would be entitled to judgment as a matter of law on that claim, as well as her § 1681s-2(b) claims for the reasons detailed above.

## VI. Conclusion

The Plaintiff is in a legal dispute with Mediacom over the latter's claim that she is responsible for the debt that IC credit reported. The state court may ultimately determine that legal issue. But her dispute with Mediacom cannot form the basis for FCRA claims against the Defendant. And even if it could, the Plaintiff's Complaint alleges no facts that IC could have uncovered that would have proven its credit reporting was erroneous. Her FCRA claims, as pleaded, are fatally defective beyond repair.

WHEREFORE, the Defendant I.C. System, Inc., respectfully requests the court enter judgment on the pleadings with respect to the Plaintiff's Fair Credit Reporting Act claims and dismiss those claims with prejudice.

Dated: February 16, 2024.

Respectfully submitted,

/s/ *Michelle L. Crunk*
Michelle L. Crunk          (ASB-2967-I71C)
*Attorney for I.C. System, Inc.*

**OF COUNSEL:**
**LLOYD GRAY WHITEHEAD & MONROE, P.C.**
880 Montclair Road, Suite 100
Birmingham, AL 35213
Telephone: (205) 967-8822
mcrunk@lgwmlaw.com

## **<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on this the 16th day of February 2024, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF. I also certify that the foregoing document is being served this day on all counsel via transmission of Notices of Electronic Filing generated by CM/ECF.

Kenneth J. Riemer
UNDERWOOD & RIEMER
2153 Airport Boulevard
Mobile, AL 36606
Telephone: (251) 432-9212
KRJ@Riemer-Law.com

Leilus Jackson Young, Jr.
CHRISTIAN & SMALL LLP
505 20th Street North, Suite 1800
Birmingham, AL 35203
Telephone: (205) 795-6588
LJYoung@csattorneys.com

/s/ *Michelle L. Crunk*
OF COUNSEL